IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DAVID TREVINO, #444918 | § | |
| VS. | § | CIVIL ACTION NO. 9:05cv171 |
| GARY L. JOHNSON, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff David Trevino, an inmate previously confined at the Gib Lewis Unit and presently confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on August 9, 2005. The Plaintiff complained about an unsafe environment, harassment, retaliation and excessive use of force. On December 6, 2005, the Court conducted a preliminary evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The Plaintiff testified as to the factual basis of his claims. Regional Grievance Officer Phillip Brooks, Warden Wesley Pratt and Nurse Thomas Maciel were present during the hearing in the event the Court wanted testimony about prison policies or information contained in the Plaintiff's records.

The Plaintiff's problems began at the Gib Lewis Unit, where he was confined in administrative segregation. His enemies spread a false rumor about him that he was homosexual. Support Service Inmates (SSIs) helped to spread the rumor. The SSIs harassed him and disrespected

1

him. The Plaintiff acknowledged that he called them names in response to their actions. The State Classification Committee from Huntsville conducted an annual review at the Gib Lewis Unit on October 7, 2003. The Plaintiff tried to tell them about the problems, but Warden Bone would not allow him to discuss the problems. The Plaintiff, in turn, responded by filing grievances.

The Plaintiff testified that his grievances purportedly prompted the Defendants to file disciplinary cases against him. He characterized the filing of the disciplinary cases as retaliation. On October 9, 2003, Counsel Substitute Mann brought him notification that a disciplinary case had been filed against him for losing his identification card. On the same day, Sgt. Stock brought him an offense report alleging that he had threatened to kill Gang Intelligence Officer Martinez. The Plaintiff acknowledged that he never actually received a disciplinary case for threatening Martinez. Still on the same day, the Plaintiff was demoted and officers attempted to move him to a demotion pod. The Plaintiff acknowledged that he refused to move. Captain Powell assembled a move team, which included Officer Martinez. Captain Powell sprayed his cell with gas twice and then sent the team into the cell. The Plaintiff testified that they assaulted him. He asserted that Martinez struck him twice in the face. He added that the Defendants continued to harass him over the coming months. One of Captain Powell's nephews, either Officer Rodney Powell or Officer Troy Powell, purportedly put feces in his food on one occasion. He explained that the food looked the same as always, but it smelled bad. He flushed the food down the toilet.

The Plaintiff testified that he sued Officer Gloria Hadnot because she operated the camera at the use of force incident and failed to take steps to prevent the incident. He sued Officer Issacks because he was on the move team and failed to take steps to prevent the use of force. He added that Officer Issacks did not strike him. He sued Warden Bone because he stopped him from telling the

2

State Classification Committee about his problems, because he purportedly planned the use of false disciplinary cases and entered into a conspiracy about the disciplinary case for threatening the life of Officer Martinez. The Plaintiff testified that he was found guilty in the loss of his identification card case. He said his punishment was 45 days commissary restrictions and 45 days cell restrictions. The Plaintiff testified that he sued Neal Barnaby of Internal Affairs because he failed to respond to his letters. He sued Internal Affairs Investigator McDowell for failing to give him a polygraph test on June 17, 2004.

The Plaintiff testified that he was transferred to the Michael Unit on June 18, 2004. He immediately noticed some of his old enemies who had been at the Gib Lewis Unit. They started harassing him again. He wrote to Warden Castro about his problems, but nothing changed. He also wrote to Director Johnson, who failed to resolve the problems.

Warden Pratt testified under oath that a teletype reveals that the Plaintiff was transferred to the Michael Unit after the completion of the interview with Investigator McDowell. The Plaintiff's allegations were investigated but were found to be without merit.

Nurse Thomas Maciel testified under oath from the Plaintiff's original medical records. The medical records reveals that the Plaintiff was examined after the use of force incident on October 9, 2003. The nurse observed an abrasion on the Plaintiff's forehead. The abrasion was cleaned, and the Plaintiff was sent to his cell.

Regional Grievance Officer Brooks testified under oath that the Plaintiff had exhausted his administrative remedies. He also stated that he had brought the applicable grievance records, records from the Office of Inspector General (formerly known as Internal Affairs), medical records and classification records. The Plaintiff testified that the Court could review the records.

The records from the disciplinary case for losing the identification card is noteworthy. The incident occurred on October 8, 2003. The Plaintiff received formal notification of the charges from Counsel Substitute Mann on October 9, 2003. A hearing was conducted on the following day. The Plaintiff was found guilty. It was noted that he did not refute the charges. The punishment imposed consisted of the loss of recreation privileges for 15 days, loss of commissary privileges for 30 days, loss of property privileges for 45 days, and remain at Line Class 3.

In evaluating the Plaintiff's claims, it is initially noted that he must show an abuse of governmental power that rises to a constitutional level in order to proceed with his claims. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). He must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982).

The facts as alleged by the Plaintiff raises several possible claims. The first claim concerns harassment by SSIs and the alleged failure of the Defendants to do anything about it. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be

4

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the present case, the Plaintiff alleged that he was harassed. He did not allege that he was physically harmed by the SSIs. He has not shown that any of the Defendants had reason to believe that he faced an excessive risk to his health or safety. Consequently, the facts as alleged do not support a deliberate indifference claim. It is further noted that verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). "[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998 (1983). *See also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation).

The claim is frivolous for the additional reason that the Plaintiff has not shown that he was harmed. Fundamental to any civil rights case, a plaintiff must show an injury as a prerequisite to recovery under § 1983. *McCord v. Maggio*, 927 F.2d 844, 849 (5th Cir. 1991). *See also Crowder v. Sinyard*, 884 F.2d 804, 812 n. 8 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990). More recently, in *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that mere verbal abuse is not actionable under § 1983 due to the absence of a physical injury.

The next possible claim raised by the factual allegations involves retaliation. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). For example, the law is well established that prison officials may not retaliate against an inmate who

5

exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

In the present case, the Plaintiff alleged that bad things happened to him after he filed grievances, thus the chronology of events supports a possible retaliation claim. The Plaintiff, however, failed to allege facts linking any of the Defendants to acts of retaliation. He failed to allege facts showing that anyone engaged in any actions with a retaliatory motive. He failed to show that any event would not have happened "but for" a retaliatory motive. His retaliation claims are wholly conclusory. The facts as alleged fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The retaliation claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The next possible claim concerns the use of force on October 9, 2003. The Supreme Court has emphasized that the core judicial inquiry in an excessive use of force claim is "whether force was

6

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Court additionally emphasized that a use of force claim has subjective and objective components. In other words, a court must consider whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8.

Several factors are important in making an assessment of the situation. The claimant must allege and prove there was an "unnecessary and wanton infliction of pain." In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.* The Fifth Circuit has instructed the courts in this circuit to consider these five factors in analyzing excessive use of force claims. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). The Supreme Court additionally emphasized that the concept of what constitutes cruel and unusual punishment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. at 8 (citations omitted).

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 (Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis

uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. The Fifth Circuit has interpreted this provision to mean there must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).

The Prison Litigation Reform Act of 1996 placed further limitations on the availability of relief. 42 U.S.C. § 1997e(e) precludes suits by prisoners for mental or emotional injury without a prior showing of a physical injury. In *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997), the Fifth Circuit held that there must be a "qualifying physical injury" for a prisoner to proceed on his civil rights claims. *Id.* at 193. Moreover, the physical injury must be more than just a *de minimis* physical injury. *Id.* The Fifth Circuit finally held that a sore, bruised ear lasting for three days was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit.

In the present case, the Plaintiff acknowledged that he refused to comply with orders to move to the demotion pod. His refusal was an invitation for officials to forcibly move him -- which they did. Force was used only after the Plaintiff refused to obey orders to move and after the use of gas failed to gain compliance. The force move team thus entered the cell. The actions attributed to the Defendants were limited. Officer Martinez purportedly pulled back his fingers and punched him twice in the face. The Plaintiff's injuries were limited to an abrasion on his forehead. His injuries were *de minimis* and did not rise to the level of a qualifying physical injury for purposes of an excessive use of force claim.

The Plaintiff also complained about two disciplinary cases. He admitted, however, that he never received one for allegedly threatening the life of Officer Martinez. The other disciplinary case

mentioned by the Plaintiff involved the loss of his identification card.  The Supreme Court has historically held that the due process clause is applicable to disciplinary proceedings where a prisoner is threatened with a loss of good time or the imposition of solitary confinement.  *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Supreme Court subsequently placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995).  The Court concluded that the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff v. McDonnell*. The Court retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement.  *Id.* at 485.  The Supreme Court went on to hold that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486.

The Fifth Circuit has applied *Sandin* to a number of situations.  Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger the protection of the Constitution.  *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision.  *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000).  The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution.  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  The loss of good time will not support relief to the extent that it adversely affects parole eligibility.  *Sandin*, 515 U.S. at 487.  However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision.  *Madison v. Parker*, 104 F.3d at 769.

In the present case, the Plaintiff's punishment consisted of nothing more than the loss of commissary, property and recreation privileges, along with remaining at Line Class 3.  His

9

punishment was not significant enough to trigger the protection of the Constitution. His complaints about the disciplinary cases fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that either Officer Kevin Powell or Officer Rodney Powell placed feces in a meal. An "isolated incident of non-remarkable proportions" does not rise to the level of a constitutional violation. *See James v. Alfred*, 835 F.2d 605, 607 (5th Cir. 1990) and *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). At most, the allegations can be viewed as an isolated prank. Moreover, to the extent that the claim can be viewed as a denial of food claim, the Court notes that the prison system must furnish its prisoners with reasonably adequate food. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). The meals must be well balanced and containing nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (5th Cir. 1985). The prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit based on the deprivation of a single meal because it purportedly contained feces.

The claim against Internal Affairs Investigator McDowell should be dismissed because there is no constitutional right to have a polygraph test. Quite the contrary, the results of polygraph tests are generally inadmissible in federal court.

As a final matter, the claims against Officer Hadnot, Officer Issacks, Internal Affairs Investigator Barnaby, Warden Castro and Director Johnson should be dismissed for an additional reason. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in any alleged act of misconduct. The only way Barnaby, Castro and Johnson could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

In conclusion, the facts as alleged by the Plaintiff fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The Plaintiff's various claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **8**  day of **December, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE